The next case, Vargas v. Kaiser Foundation Health Plan of Washington, is submitted on the briefs. Our final case on calendar for argument today is Nielsen v. U.S. District Court. Counsel for petitioner. Thank you, Your Honor. May it please the Court, Patrick Philbin from the Toradon Law Firm for petitioner, the former Secretary of Homeland Security, Kirsten Nielsen. I'd like to reserve five minutes of my time for rebuttal. All right. Thank you, Counsel. Your Honors, as the magistrate judge recognized in the order below, no court of appeals has approved the deposition of a current or former cabinet secretary for 80 years. In fact, in that time, every court of appeals that has been petitioned by writ of mandamus to quash such a subpoena has granted that relief. Just two years ago, this Court quashed, granted a writ of mandamus to quash a subpoena for the deposition of former Secretary of Education, Betsy DeVos. And that case established that extraordinary circumstances are required to ever justify the deposition of a current or former cabinet secretary. This case doesn't remotely satisfy the DeVos standard of extraordinary circumstances. Counsel, what are we to do with the representation from the government that Ms. Nielsen's intent was the only intent that mattered? What are we to do with that? Well, Your Honor, I think that that goes to the plaintiffs in the case try to make that something that is important for the second DeVos factor on whether evidence from Secretary DeVos herself is essential for their case. That is, under DeVos, a test would have to be absolutely needed. But the simple fact is oftentimes Person A's intent may be relevant, but that doesn't mean that you have to have Person A testify in order to find out Person A's intent. Do we have any other case where the government has taken the position that the official being sought to be deposed was the only one who can give the information that's requested? Well, Your Honor, let me first make a distinction in answering that question. Because the government has not taken the position that the person to be questioned is the only one who can give the information. Who else would be able to give the information on her intent? My understanding is that the lower cabinet officials who were deposed said that they were not able to talk about what her intent was. Am I reading the record wrong? I believe so, Your Honor, with respect. And we explain in our briefs that two of the lower cabinet officials who were deposed were not specifically asked about Secretary Nielsen's intent. They were asked other questions. And I'm limited, Your Honor, because those transcripts are under seal. I can't parse the details unless the Court wished to close the courtroom. But they were asked questions like, did she hesitate before signing? Did she hesitate before signing is not a question of do you know what the policy purpose for this was? And there were people who — No, it's not the policy purpose. The issue is what was her intent in implementing the regulation, not what the purpose of the policy was. Many people could talk about that because it was discussed in Congress and a lot of other places. But the specific issue that was being sought from Secretary Nielsen was what was her intent. Yes, Your Honor, and that's what I meant. Her intent, her purpose for signing this policy document, she was the officer who signed the document. Purpose and intent are two different things. The purpose of the statute may be one thing, but her intent in signing it may be different. Very well, Your Honor. Her intent. There were others who could testify as to her intent. And to give an example, and this is something that was unsealed. I confirmed this with the government. This is Exhibit 1 to the government's amicus brief, part of the transcript of the deposition of Kevin McAleenan, the former head of Customs and Border Patrol. He was asked, at any time did she communicate to you that in selecting this option, her intention was to send a message to Central America that if you come here, you will lose your child? Answer, no. But the problem is, right, then really the only person who can, if she didn't happen to tell someone else what her intent was, the only person who can testify as to what her intent was is Nielsen herself. And yes, in a case, say a criminal case where the defendant has a Fifth Amendment right not to testify, intent has to be established by other means. And in a civil case where intent is contested, people can try to provide direct evidence and they can try to provide circumstantial evidence. If a witness testifies to their intent, their testimony can be impeached. Right? There can be a dispute about credibility, but ultimately the best direct evidence of someone's intent is their own testimony. Don't you agree? Well, Your Honor, let me distinguish whether it's the best evidence, because DeVos is not a best evidence test. DeVos does not say if it would be better to have this, you can depose the secretary. What if the deposition was denied and all that the plaintiffs have is circumstantial evidence of intent and then the government gets up and says they didn't meet their burden of proof? Well, Your Honor, I think that goes to some extent to the third part of the DeVos test, which is, is the information available from other sources? And here it is available from other sources. And the first source is Secretary Nielsen's own testimony under oath in front of Congress, because she was asked specifically in front of Congress, did you do this for the purpose of separating families to create a deterrent? And she said no. And she was actually asked repeatedly that question. She testified twice under oath in front of Congress, once in the House and once in the Senate. And she was asked questions like, there was a policy to rip children away from their parents. Don't use evasive language to avoid it. Admit it. That was the kind of questioning that would be so harassing you couldn't do it in a Rule 30 deposition. And she testified twice and consistently testified no. That was not her intent. Counsel, what do we do with the fact that this would not be a typical deposition, where you were talking about the harassing questions, that the magistrate judge did temper the request to a finite number of written questions? Why is that? Why was that an abuse of discretion? Because, Your Honor, to have any questioning of a Cabinet secretary about that secretary's reasons for taking an official government action, the DeVos test has to be satisfied. So there can be no questioning, even if it's limited to a number of questions. And really here, Your Honor, it was just that there will be 25 questions and 10 redirect questions to be read in front of a court reporter on video and answered orally. This was not like written interrogatories. It was going to have to be done. But it wasn't a live deposition either. So it was kind of a medium. Yes. But even so, Your Honor, DeVos sets a test that requires that all of the three factors, all of them, have to be met. And I'd like to go back to the first one, which we sort of dive right into talking about Secretary DeVos's intent. The threshold factor under DeVos is a strong showing of bad faith. And there has been no showing of bad faith here to satisfy that standard. And remember, plaintiffs have to satisfy all three. If there's an error in the magistrate judge's order below on any one of the three, that means that the motion, that the subpoena should be quashed. And here, on bad faith, this is an important threshold requirement precisely because of the constitutional issues involved, the separation of powers conflict here. This is something Justice Gorsuch pointed out in the Commerce Department case where there was an attempt to depose Secretary Wilbur Ross. And he pointed out, concurring when the Supreme Court stayed that, that an extraordinary accusation of bad faith against a coordinate branch of government requires a compelling justification, an extraordinary justification. Here, there is no showing of bad faith. The magistrate judge pointed to four things. None of them hold up under scrutiny. The first was she pointed to the legal memorandum from the General Counsel at DHS to Secretary Nielsen about this policy. And the language that the magistrate judge quoted specifically said, quote, this is from the memorandum, DHS could permissibly direct the separation of parents or legal guardians and minors so that the parent or legal guardian could be prosecuted. That doesn't show bad faith. That doesn't show that the real purpose was anything other than the stated purpose. It shows that the desire was to increase prosecutions, the stated purpose of the policy, and that the separations could be done so that the parent or legal guardian could be prosecuted. The separations. Did it say that the purpose was to increase prosecutions in there? Yes, Your Honor. In fact, the subject line. Like what you were just reading? I was just reading from my notes. Now I'm reading directly from the exhibit. It's Exhibit C. What's the excerpts of record page number? We don't have excerpts of record because of mandamus. Oh, it's a petition. Right. So it's Exhibit C to the petition. Right. Okay. And the subject line is criminal prosecution of aliens who entered unlawfully, colon, legal guidance on potential separation of family members. And then it went on to say, we understand that you are presently considering three proposals that in coordination with the Department of Justice would increase prosecutions against aliens who cross the border illegally. And then it's in discussing those options because one of the options, which is to refer all amenable adults, even those who present with minors, if you refer them to prosecution, you're going to have to separate them from the minors. That's just what happens. But weren't there some assertions that some immigrants who were not prosecuted were nevertheless separated from their children? There are assertions, yes. And I believe that some of the plaintiffs in this case were referred for prosecution. And at that point, the way it works logistically, my understanding of the border is CBP refers someone for prosecution. At that point, they separate the parents from the minors. But then for some reason, the U.S. Attorney's Office might not end up going forward with the prosecution, but the separation would have occurred. Your position is there were no immigrants who were not referred for prosecution that were separated from their children? Your Honor, I can't guarantee everything that happened everywhere at the border. I thought that was one of the assertions, that there were some immigrants who were never referred for prosecution, but were nevertheless separated from their children.  No, Your Honor, it wouldn't. Because the question here, the bad faith question, this is critically important, is in the adoption of the policy, right? Plaintiffs have a tort claim that they are trying to assert for intentional infliction of emotional distress. They could assert that the tortious action was the adoption of the policy itself, which is part of their case, and that focuses on an action of Secretary Nielsen. If they want to show bad faith related to that, in order to be able to depose Secretary Nielsen, they have to show that in her adoption of the policy, at the time she adopted the policy, there was a pretext or some bad faith. So the implementation of the policy, is it relevant in your view? It is irrelevant to the particular issue on this petition for mandamus, yes. Because later implementation, the fact that someone of the thousands of CBP agents at the border or other agents did something wrong that was not in accordance with the policy or the implementation of the policy, the relevant evidence, circumstantial evidence of pretext, if they don't actually implement it in a way that's consistent with the stated reason. Because, Your Honor, it happens after the adoption of the policy. If there was something to link. It's not irrelevant. I understand you're arguing that it's perhaps less probative, but I mean, what else could they point to? I mean, among the body of evidence that people can point to to show pretext, why isn't implementation. Your Honor, they've had discovery of tens of thousands of documents from the government. What they tried to point to, what they could point to if there were some evidence of pretext, would be emails, something like that. They've got the internal documents. But why can't they, if in the absence of direct evidence, why can't they also, or in addition to direct evidence, why can't they also look for circumstantial evidence of pretext? In fact, that isn't commonplace to look at a circumstantial evidence. I would say, Your Honor, because here the threshold showing that's required, the threshold showing of bad faith, has to be a strong showing sufficient to overcome a structural separation of Article 3 and Article 4. You're saying there's a whole category of evidence that can't be considered to determine whether they met that showing. I would say, Your Honor, there is nothing in this case that could link any of that evidence into a pretext, because all it is, is some assertions that certain immigrants who came across the border may have been separated without being referred for prosecution. We don't know how many. We don't know under what circumstances. We don't know anything else. And the mere fact, in this case, the mere fact that somewhere sometime among the thousands of agents executing things, there were mistakes made, that cannot, excuse me, that cannot be used as sufficient. Well, they're saying it wasn't a mistake. It was implementation of the policy and that the secretary is responsible. The secretary does not just promulgate a policy and then hands off. The secretary is also responsible for making sure that policy is carried out in accordance with the direction that was given by the secretary. Is that correct? Your Honor, the secretary is in charge of the department. Right. But here, again, for this particular tort action, to show the intent when they're trying to show that it was the adoption of the policy that was the tort, they have to show something about the adoption of the policy that was pretextual. I agree. I understand what you're saying, but you're saying the implementation is irrelevant in that context.  because the implementation carries out the intent. Well, Your Honor, I would put it this way then. Is it conceivable that in some hypothetical case there would be sufficient evidence of a systematic implementation that was at odds with the stated intent of the policy, that it would be possible potentially to link that back and show that the policy was pretextual? Hypothetically, that could be possible, but that's not this case. All of this case there is, there are a few assertions that it happened that some people might have been separated without being referred, with no specifics as to how much, how many, under what circumstances. Is it linked to anything? Was it reported to anyone? None of that. On your alternative argument regarding the magistrate judge's authority to decide the motion to quash, can you address the contention that that issue was raised? Yes, Your Honor. And I think it's important here to bear in mind this Court's decision in Cole v. U.S. District Court for the District of Idaho, which made clear that not presenting an issue to a district judge just factors in on one of the Bauman factors, whether there's an alternative route for relief. And here, when we requested a district judge, we asked for a district judge just to be assigned to the case so that we would have that alternative, our filing was stricken from the record. And it was stricken from the record with the explanation that we were not a separate case, we were simply ancillary in being plugged into an existing case where the parties, all the parties, had consented for all purposes to the authority of the magistrate judge. And so that left us in a position where we didn't have access to a district judge. It did not appear. And under the record, does it show that you were specifically told that's why, that you were not being treated as a separate case? It's in the order striking our filing, because the magistrate judge there explained that this is not a dispositive miscellaneous case where the resolution would constitute final decision, because it wouldn't result in the dissociation of the district court from the case entirely because of the underlying related case, which is the PG Wilbur case. So the rationale was we were ancillary to that case. And really under this court's decision in the Robert Ito Farms versus County of Maui case, which is cited in our reply brief, there the court held it where the parties to the case have consented to the magistrate for all purposes. Someone else there was a movement trying to intervene came in and the magistrate judge denied that. This court held that that person trying to become a party had no access to a district judge. The only recourse was directly to the Ninth Circuit, because it was where the parties had consented, the non-party doesn't get access to a district judge. So we reasonably understood, after our request to have a district judge assigned was stricken, that we didn't have access to a district judge. If we had tried to go to a district judge, that probably would have been stricken as well. But you're not arguing that Ito actually controls this case, right? My understanding would be your contention is that Ito is actually distinguishable. Exactly. Correct, Your Honor. Exactly. Because this case presents a constitutional question, a separation of powers question, and that aspect of it was not addressed in Ito. That didn't have to come up there. And I would, in further response to your question. Counselor, do you take the position that magistrate judges are not authorized to decide constitutional issues? Your Honor, certainly this constitutional issue in a case like this, and the Supreme Court in the Peretz case held that magistrate judges cannot, without consent, preside over the impounding of a jury in a felony criminal trial. This court held in the Rivera-Guerrero case that magistrate judges cannot decide issues like involuntary medication. There's a line of decision saying there's certain constitutional issues that magistrate judges cannot decide without the consent of the parties. And our contention is particularly where the constitutional issue in this case is a separation of powers clash between the authority of Article III courts and the executive, that you have to have an Article III judge deciding that case. Now, this case is a little thorny procedurally because technically the secretary was not a party to the underlying proceedings. Yes. And generally a deponent is not considered a party to the proceedings. So what do we do with that? Well, Your Honor, I don't think that it changes any of the analysis under DeVos. DeVos was a parallel circumstance. But we're talking about the authority of the magistrate judge at this point. So procedurally how do we analyze that issue in terms of whether or not Secretary Nielsen was a party or not a party, and whether or not the consent of the parties gave the magistrate judge the authority to decide this issue? That's a unique question. It is, Your Honor. And I think it factors in this way, in that because of the Robert E. Doe Farm decision and the way that the magistrate judge here struck our request for a district judge, I think it was reasonable for us to understand that she was saying you don't get access to a district judge. Right. I think our — But I'm addressing the authority issue. Yes. The magistrate judge said you don't get access to a district court judge. I'm deciding this issue. And your position is the magistrate judge did not have authority to decide that issue because it's a constitutional issue. And I'm — what case is that? I'm struggling with the procedural quandary here, because once the parties consent, then the magistrate judge has full authority over the entire case, including ultimate disposition of the case. And so I'm struggling with how you get around that if the secretary is not considered a party. Because, Your Honor, I think that the court just has to — there is nothing talismanic in party status. Right? There will be a constitutional requirement that certain issues be addressed by a party or not. Well, I guess — And as we point — How would you have us write that rule? Discovery matters go to a magistrate unless they raise separation of powers issues. Or, like, how do we write that rule? Because this case doesn't look like the other cases where courts have said magistrates don't have authority because of the nature of the issue. Well, it does — I believe, Your Honor, it looks like them in the sense that it is a very important constitutional issue. I mean, think of it this way — So that's the rule? Magistrates can — Sure. They can't write these things unless it's a very important constitutional — like, that's not a very satisfactory rule to write or to expect people to understand what it means later. No, Your Honor, of course not. But I think that the rule from this case could be the magistrate judge does not have authority to decide an article — a separation of powers issue between the judiciary and the executive branch. When a separation of powers issue is raised, an Article III judge has to — What case would we cite to support that proposition? Well, Your Honor, you could cite this Court's decision in pacemaker diagnostics, which is cited in our brief, which was a case involving patent issues and where the parties had consented to the magistrate for all reasons, and there's some questions whether that was legitimate. The Court held that it was, but I believe it was then-Judge Kennedy, before he was placed on the Supreme Court, who wrote the opinion pointing out that it's all right for magistrate judges to decide some issues because there's also always the opportunity, the possibility in the course of the litigation to seek the resumption of the case by an Article III judge. And he pointed out there that one of the circumstances that could warrant that is a constitutional separation of powers where another political branch of the government is involved. That's exactly the scenario that he was foreseeing, is if there's a conflict with a political branch, you might have to have an Article III judge resume authority over the case. My understanding of pacemaker, we said, and this predated I think the Supreme Court's decision approving the magistrate judges handling all matters and consent cases, but we basically reached the same decision in pacemaker, and we said one of the reasons why we think this is okay is because the Article III judge would retain close supervision of the case and that there would be good cause for resumption of district court control. And it says good cause would exist in a case for resumption of direct Article III control exists in a case where a political branch of the government is directly affected or where a substantial constitutional question is presented or where the rights of numerous parties not present before the court might be affected by the decision or in any other case containing sensitivities such that determination by an Article III judge is required. So it seems to me that this motion would fit at least two, possibly more of those factors for good cause. I think my, or my questions are sort of procedural, you know, what in light of the waiver arguments, I understand your argument is that, you know, at the opportunity that we, we didn't, we showed, we showed that we weren't consenting because we requested a district court judge that was struck. So what else were we supposed to do essentially before the magistrate judge? And then once we had the opportunity, we filed this petition, I guess, is that, should we see that as enough under these circumstances? I think that, you know, there's, why wouldn't that, I think the magistrate judge's argument is that, well, there was all this time you didn't argue this to me, right? That I didn't have the authority to issue a decision. We went through, you know, multiple hearings on the issue and it wasn't until you went to the Ninth Circuit that you said, I didn't have the authority. So I think that more of my concern is, is the procedural issue. Well, Your Honor, and that, that I think is a second aspect to it. The one aspect is, why not go to the district judge? And I think we've addressed that because when we asked to have one that was stricken and there wasn't a district judge, the other aspect I think that you just were putting your finger on is, why didn't the issue get raised to the magistrate judge? Argue there. And I think there, it's this court's decision in Bastidas versus Chappell that gives the applicable reasoning. And it shows why, even if the argument wasn't raised below, this court should address it. And of course, that was in the context of an appeal where usually the, the waiver would be applied, I think, more strictly rather than on a petition for mandamus. And the analysis there, what the court pointed to are a couple of factors that made it proper for the court to address the issue of magistrate judge authority, even though it wasn't raised at all in the lower court. And one of them was that the case there, the issue there, implicated structural principles of article three, which is the same sort of principle here. And the court pointed out that when Congress was dividing dispositive and non-dispositive matters for what magistrate judges can decide and they can't decide, it was drawing the line with the constitution in mind because of a concern that it would be unconstitutional to give those dispositive matters to magistrate judges. Kelsey, you well exceeded your time. We helped you do it. So we'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. And may it please the court, Neil Sani with the ACLU of Northern California on behalf of the real parties and interest plaintiffs. And I'm here with my colleague Bree Byrne-Wenger. And unless the court wants to first start with the magistrate judge, I would like to start with the bad faith discussion, then turn to the essential related questions that Judge Rawlinson started, the discussion with my friend, and then turn to magistrates, if that works for the panel. However you want to present it is fine with us. I agree, Your Honor. I think on bad faith, my friend's argument on the other side reflects a So in the DeVos case, when talking about bad faith, we're talking about a showing of agency bad faith, not the secretary's bad faith. And that goes exactly to Judge Rawlinson's earlier question, which is the question about the difference or a mismatch between the stated purpose of a policy and the actual intent or motivations behind the policy. And here we've established a thorough record that was before the district court showing that since early 2017, DHS officials developed a family separation proposal that did not turn at all on prosecutions, but was intended to deter migration to the United States. And the record demonstrates that prosecution was added later in the process as a legal justification for the policy. And I think the post-implementation evidence, as came up in the colloquy earlier, is critical. So two of the three plaintiffs in this case were never prosecuted, yet they were separated from their children for more than two months. Were they referred for prosecution? Your Honor, I do want to directly address that, because that is a merits issue that has not yet been, and it's a highly disputed factual issue. So, you know, we believe at trial we will be able to show that many families were separated without even being referred to prosecution. And in fact, we believe we'll be able to show that one of the plaintiffs here was separated before being referred to prosecution. I also want to point this Court. There's a recently unsealed document on the district court docket in the underlying PG litigation. It's ECF 19011 at pages 5 and 7. That is a flowchart right after, I think, implementation of the policy, so in May 2018. That flowchart, on the flowchart, shows separate families, then due criminal process. So that flowchart itself suggests that separations were occurring before, you know, even potentially referring for prosecution, and definitely before prosecution. I haven't seen that flowchart, and I will go back and look at it, but is that flowchart just sort of showing the process of a case, or what is that flowchart supposed to be showing? So, Your Honor, I have two responses to that. So, one, I think our understanding of that flowchart is it's showing how Border Patrol agents are supposed to process family units coming over the border. But more importantly, for purpose of this appeal, is we want to ask Secretary Nielsen what that flowchart means and what she understood it to say. And if she understood it to allow for separations without prosecution or before the decision was made to prosecute, why she allowed the policy to continue. And so I think that kind of demonstrates, right, our claims, and I think this reflects the misunderstanding of our theory by the other side. This is not an APA case. This is not a case challenging a particular agency policy. We are challenging the intentional separation of our plaintiffs' families. And so to prove that, we can prove either that the defendant's intent was to cause them emotional distress or that they acted with reckless disregard to the probability, the substantial probability of emotional distress. And so it is critical. Can I unpack that just for a minute? I'm trying to sort this out because any time, and I think the Secretary pointed this out in her Congressional hearing and other places, any time that a parent is criminally prosecuted, you're going to have a separation problem or the possibility of a separation problem, but I think the reality of one at the start anyways. So doesn't the bad faith argument have to hinge on we're going to set this policy in place knowing that prosecution is not likely to happen or isn't going to happen routinely? I think that's one way in which we could show bad faith. We could also show that there was knowledge that it would be impossible ultimately for there to be prosecutions of the number of people. Okay, so I want to stop you there. So what do we give to the fact that a month before DHS passes its policy or implements its policy about this, the DOJ had issued a policy saying all cases referred for prosecution for illegal entry are to be prosecuted. So don't we consider that in terms of what DHS is doing in its policy one month later? No, Your Honor, because I think the thing that we are challenging is the separation, which the record shows in many cases, again, with several of our plaintiffs, occurred without them being prosecuted, right, and before there was potentially, again, it's a factual question that we hope to prove at trial, before the referral to prosecution. We also have evidence, you know, showing that, and this you can look at ECF-190-14 and ECF-190-15, showing that in the lead-up to issuing the policy, policymakers at DHS explicitly described the family separation in terms of deterrence, so that there was no prosecution rationale added on there. And I think what's important here, we're not trying to prove the merits of our claim in this Court. That would actually be improper. The government is not even here, right? The government is the other side. We are arguing about whether there's bad faith for purposes of taking a deposition. And I'm just trying to understand the theory so that I make sure that I understand each step. And so I'm just going to ask this one last time and then we'll move on, but if the argument is separating families is going to cause distress, and of course that's true, that's always going to be true, but your argument for a tort claim is that you are somehow causing me distress just for the purpose of causing me distress as opposed to accomplishing some legitimate government objective, right? Yes. Okay. So then the theory has to be then that the policy states everybody who comes across and we have a case for saying they're doing so illegally is going to be referred for prosecution regardless of family status or whoever they might be with, right? So we believe that that policy was a pretext for just separating families, and that was borne out in the implementation of the policy. So I agree with you there. So that's what I'm getting at. But the policy is written in terms of referring for prosecution. So your theory has to be even though the policy said referring for prosecution, we knew at the outset or this agency knew at the outset they weren't going to refer people. They were just going to do the family separation. Yes, Your Honor. We think the record we've assembled demonstrates that. And I think even the memo that my friend on the other side quoted from, the Mitnick memo, you know, he quoted from an earlier part which talks about prosecution, but later in that memo it says to the extent that there is any consideration of separating adults and children through the immigration process, our legal position is likely strongest in those cases in which separation occurs in connection with referral of an adult family member for criminal prosecution. And I think that read in light of the record, including the sealed e-mails that exhibits K&L of the petition that the district court relied on specifically, suggest that this prosecution rationale was developed to have a strong legal position to separate families. And so we agree. This case, a lot of it is about pretext, but the pretext for purposes of the deposition here is just whether there is a strong showing of bad faith in front of the agency. And we think we've established that. I also think what's notable is the United States in its amicus brief before this Court does not contest bad faith. And this Court in the DeVos case did not question the district court's bad faith finding, and I think that's for good reason, because bad faith is a quintessential factual question that even on an ordinary appeal, this Court's clear error standard would be highly deferential. And so on mandamus, I'm actually aware of no case, and I don't think Secretary Nielsen cites one, in which a court of appeals has reversed the district court's bad faith finding on a mandamus review. So I just think the bad faith question here, the district court's finding is well supported and is demonstrated, you know, by the plethora of evidence both predating and postdating the signing of the policy. So unless we have additional questions on bad faith, I'd love to turn to Judge Rawlinson's first question, which I think got to the heart of the matter. And Judge Rawlinson asked about whether there's any other case in which the government has taken the position that it has here. And to my knowledge, there's not. And I think that's what highlights the unusual posture about this case. The plaintiffs have consistently argued that this case does not turn on Secretary Nielsen's intent in adopting the policy, right? We do not initially seek Secretary Nielsen's deposition, and we focus on obtaining information from a number of other officials who spearheaded the year-long effort to separate families, which included former CBP Commissioner Kevin McAllen and former ICE Director Thomas Homan. But we are here because the government has insisted that solely Ms. Nielsen's intent, knowledge and goals matter. And despite what it says in its amicus brief here, the government's litigation positions in the district court and in the Arizona parallel lawsuits make clear that in its view, the only evidence that can show that intent is direct evidence from Ms. Nielsen. So that is why we are here, and that's why this case is critically different from all of the other post-Morgan mandamus cases, because in those cases, the government invariably contends that the Secretary's motivations are not relevant, right? In the average APA case, in the DeVos case itself, everyone agreed that Ms. DeVos's intent was not essential because it's an APA claim. But here we have this unusual posture where the government contends Secretary Nielsen's intent is not just essential but dispositive. And the plaintiffs, we disagree with that. And we think that, you know, at trial or before trial, the district court will agree with our position that we do not need to rely solely on Ms. Nielsen's intent. But if the government continues to press that theory, we should at least have the opportunity to protectively depose Secretary Nielsen in the event that the theory is accepted. Well, another way to look at that is, if you disagree with the government's position on intent, why doesn't this look like the other cases where essentiality has not been found because plaintiffs have said, I can prove my case regardless of this? It might be helpful, it might be supportive, whatever, but I think I've got a case no matter what. Yes, Your Honor, and I think, you know, we – I think that's a great question, and I wish the government were here on the other side to kind of explain its position. But we agree that it's not essential. And, you know, I again want to point the Court to another kind of post-briefing filing in the district court. I know the record here is confusing because we couldn't file excerpts, but ECF 194 in the PG litigation, that was a status report the parties filed after briefing or at least after we filed our brief. And there, we specifically asked the district court to resolve this question about whose intent matters. And we noted in that filing that if the district court accepted our position, then Ms. Nielsen's deposition would not be necessary, and presumably this mandamus proceeding would not be necessary either. But the government resisted and said that there may need to be a fuller record to decide that intent question. So I think that's – that illustrates the bind that we're in. The plaintiffs would be perfectly content if we knew that the district court was rejecting the government's theory, then I think we would all agree that Ms. Nielsen's deposition is not essential. Why isn't it the plaintiff's theory that should govern this analysis? Because the plaintiffs are the sort of master of the case. You pick the theory that you want to pursue. You've picked a different theory. Yes, Your Honor, we picked a different theory, but in discovery, your plaintiffs and defendants are entitled to discover all information relevant to all the alternative theories and defenses. Right, discovery is broad, just arguably relevant, not essential. So our standard here is, is it essential? So I guess I'm not quite following. I give you the government definitely made it relevant within the scope of discovery. That doesn't necessarily follow that it's essential under the factors of this test that we're applying. Sure, Your Honor. And I think that's an interesting question, and it's kind of – imagine, I guess imagine in response to your question, if there had been summary judgment and the district court agreed with the government, then I think we'd be in a different posture where we'd say it's definitely essential, right, because that's now the theory of the case that we have to prove. To the extent this Court thinks that it's premature and this legal question about whose intent matter needs to be decided first, I guess it's always within this Court's power to send it back to the district court and say the district court needs to decide this question. And I don't think actually the plaintiffs would oppose that, so long as it was without prejudice for us to reopen the deposition if the district court did, in fact, adopt the government's position, which we think they won't. The district court won't. It's difficult because in the normal proceeding, there would be discovery. Then you would go to summary judgment. If you spy that, you go to trial. Then there's an appeal. And I think you usually don't get to – I mean, let's say the district court did rule in your favor on the intent issue, so you didn't get to depose. Then you go to trial, and then there's an appeal, and the government says the district court erred on the intent issue. That's what they had to prove. And then, I guess, at that point, if we agreed, we would remand, and you would have to get into discovery all over again. So I think it's a little bit – I mean, I'm trying to figure out what, as a practical matter, what we would do in this type of circumstance. Yeah. I mean, I think it's an interesting question of when it's on appeal, I think you'd have to reverse. I mean, in that instant, if you agreed with them, then you'd reverse, and you'd kind of reopen the trial and the fact-finding there. You'd have to unwind everything all the way back to discovery. Yeah. But it is a highly factual question, so I'm not sure what kind of standard review this Court would apply. But I do think that that unusual posture is why we're here. We are very cognizant of the burdens that these kind of discovery pose on executive officials, and we did not – I just want to stress that we did not initially seek this deposition. We sought this deposition as a result of the government's litigation position late in discovery. And so if that – if the government disclaimed that position, if the government went for a summary judgment and it was rejected, or if the district court at this point even rejected the government's position, we would not be seeking this deposition. So I think it's very different from the DeVos case, where it was pretty clear that the plaintiffs did not need that deposition, and it was just three days after she left office, they went and tried to depose her. You know, here, we tried to not depose the Secretary, but the government, in a sense, has forced our hand. And so we want to create a process that's practical and reflects the concerns that were set out in DeVos. And I think to that point, one of the judges asked a question about the actual order here. And the order here is, of course, is far more limited. The plaintiffs asked for an oral deposition, and the district court ordered a written deposition, a pretty limited written deposition under Rule 31. And I just wanted to flag, in the oral argument – Did that get modified, though? I thought it was supposed to be a limited oral deposition. So it's – I think the way it works is that the questions are written and read by a court reporter to the Secretary, who would answer orally. But in the oral argument for the DeVos case, one of the judges – I believe it was Judge Mylon Smith – asked specifically if the district court in that case had considered a more limited deposition under Rule 31, and the parties conceded that it hadn't. And so I think that's another critical distinction between this case and the DeVos case. I have one other follow-up. So my understanding is that there were – there's another case that's pretty similar in Arizona. There were depositions of people that the government has identified that have relevant knowledge on this question that we've been talking about, about intent. There were depositions in that Arizona case. You have the benefit of those depositions, and you haven't sought to redepose those same people in this California case. And I think that you have said you haven't done that because the government's position is that you shouldn't be allowed a second chance at those depositions. Is that correct? No, Your Honor. I don't think that we said that we wouldn't be allowed to. I think we agreed with the government on this process, so I'm not sure that the government has said we're not allowed to reopen them. So why haven't you reopened those depositions? Because certainly the circumstances have changed between the Arizona case and the California case now that the government has shifted its position. Why haven't you at least run down those roads and made sure that you can't get what you think you need, particularly on an issue you don't even think is essential, before you're here asking for a former secretary's deposition? Sure, Your Honor. So I have three responses to that. So first, we just think that the record makes clear. And again, like my friend, I'm not able to quote from the record, but I think if you look at the transcripts of Homan's deposition at pages 54 to 58, McCallan's deposition at pages 297 to 298, and the Wolf's deposition at 236, we think the record just makes clear that they did not have sufficient intent, that the existing record makes clear that they do not know enough about Ms. Nielsen's intent. The second point, Your Honor, is more of a practical one, that this change in litigation position happened on the last day of discovery, when all the depositions had been taken, and given what we read in those depositions, you know, we thought that was sufficient to show that they did not know enough about the intent of Ms. Nielsen. And then third, Your Honor, I think it's the government's position is actually what's most important. So the government has taken the position in the Arizona litigation that the subordinate officials' subjective impressions about the policy, which is all that's reflected in the deposition transcripts, is not enough to show Ms. Nielsen's intent. So I think we have to take the government at its word that it would be kind of a futile goose chase to go in and try to redepose these people when the government has already said that their impressions of what Ms. Nielsen did is not relevant and would not serve the answer. And I think, Your Honor, this actually goes to a point that my colleague on the other side said as well. He said that DeVos does not create a best evidence rule, and that is true, but DeVos does not create a partial evidence rule either. So it is not a satisfactory, reasonable alternative. That alternative source will just give you a small amount of what the evidence or information you need, right? So the question in DeVos is whether there are reasonable alternatives to give you the information you're seeking from the Secretary. And in DeVos, it did. But here, as it came up in the previous colloquy, even if we could ask more questions, it would not contain the full amount of information that we could get from Secretary Nielsen, particularly when the government has taken this categorical position about her intent. I know my time is short, so I want to quickly turn to the magistrate judge issue real quick. And on the magistrate issue, I think, you know, there's a lot of complexity here, but I think there's one very simple point that this Court can kind of dispose of the issue right away, which is that it's not about mandamus. It's just about simple waiver. So the Secretary Nielsen could have made her constitutional avoidance argument either in the declination to consent or in her motion to quash briefing. So the constitutional authority issue was never raised until the mandamus petition on the last page in, like, one or two paragraphs. And so I think putting aside the failure to seek Article III judge review, which I think, again, is also under Cole, is essentially — I mean, Cole says it gravely weakens and is all but fatal to a mandamus petition. But even putting aside the whole mandamus and the complexity of, like, getting to the Article III judge, we expect for the normal appellate process for a party to at least raise the argument. And if there's such a foundational argument that a magistrate judge cannot decide a nondispositive motion that implicates separation of power principles, a novel issue that no court has ever addressed, they should at least have had to mention it in their district court briefing. And so it was never mentioned. And so I think just on that basis, the constitutional argument can be dismissed. So for those reasons, you know, we urge you to deny the mandamus petition. Thank you, counsel. Rebuttal, two minutes. Thank you, Your Honor. Just some quick points on rebuttal. To finish the response to Judge Sung's question on the not raising the constitutional blow, Batista v. Chappell gives the complete analysis of why this court should address that issue anyway. Constitutional issue involving separation of powers, and there was murkiness about how to get review of that because there was not an angle to get to a district court judge. Judge Forrest, on your questions about the DOJ zero-tolerance policy, I think that is precisely relevant, that there's a policy we're going to prosecute all of them, and that does make a difference as to any concept of bad faith or pretext here. And, in fact, there is also in the record described in our brief 30B6 testimony from a DHS witness that the DHS referral policy was to be limited, it was operationally limited, intended to be to the capacity of the U.S. Attorney's Office in the particular sector. So that also undermines any idea that there was bad faith. We seem to have shifted now on argument here to the idea that the bad faith, it's not really the Mitnick memo. There is one sentence plucked out of context that my colleague would try to and can you do this in order to support prosecutions? Given that we're reviewing for clear error under the mandamus standard, and we, you know, let's say there's different ways to view the evidence, that's a classic situation in which we would defer to the district court's factual findings. So what would, what could you say is the clear error here? Why was the finding clearly erroneous? Because, Your Honor, number one, the magistrate judge didn't point to the sentence that my friend has pointed to now. She pointed to a different sentence. And overall, the memo is very clear. It is providing legal advice about a proposal to increase prosecutions. And it would be clear error to try to make an extraordinary charge of bad faith, to overcome the presumption of regular procedure by an executive branch agency by trying to draw inferences from one sentence in that entire memo. And as I was saying, we seem to have shifted on bad faith now to the idea that well, people were prosecuted, were separated afterwards when there weren't prosecutions. But that has largely come up at argument. There is no, it's not something that the magistrate judge relied on. She didn't refer to people being prosecuted, being separated without prosecutions. It's not something that there's data on. It's just references to things in the underlying case that were not actually presented here. And something after Secretary Nielsen's decision that is not related to her decision could not be sufficient under DeVos to establish bad faith in that decision. And that is sufficient to have the subpoena for the deposition quashed. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for today. And we are adjourned until tomorrow morning. All rise.
judges: RAWLINSON, FORREST, SUNG